UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBY JINDAL, GOVERNOR<br>OF THE STATE OF LOUISIANA | CIVIL ACTION NO. 14-CV-534 |
| VERSUS | JUDGE SHELLY D. DICK |
| THE UNITED STATES DEPARTMENT<br>OF EDUCATION, AND ARNE DUNCAN,<br>IN HIS OFFICIAL CAPACITY AS<br>U.S. SECRETARY OF EDUCATION | MAGISTRATE JUDGE BOURGEOIS |

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] and the *Motion to Dismiss First Amended Complaint*[2] by the United States Department of Education ("Defendant or DOE"). Plaintiff, Governor Bobby Jindal ("Plaintiff" or "Governor Jindal"), has filed *Oppositions*[3] to both motions. On November 20, 2014, the Court held a hearing on the issue of standing and ordered the parties to file post-hearing briefs for the Court's consideration.[4] For the following reasons, the motions will be denied.

The only issue before the Court is whether the Plaintiff has the requisite standing to bring the suit, a question which is determinative of the Court's subject matter jurisdiction

---

[1] Rec. Doc. No. 19.

[2] Rec. Doc. No. 28.

[3] Rec. Doc. Nos. 17 & 29.

[4] *See* Rec. Doc. Nos. 29 & 30.

to hear the case. The merits of the claim are not before the Court at this stage of the proceedings and nothing in this opinion is intended to, nor should it be construed as, the Court's opinion regarding the merits of the claim.

**I.    BACKGROUND**

According to the DOE, in 2009, Governor Jindal enthusiastically committed the State of Louisiana to join forty-eight (48) other states in a collaborative, State-led effort to develop academic content standards that were common across States but required no particular curriculum, which became known as the Common Core State Standards Initiative. In 2010, Governor Jindal was equally enthusiastic when he committed Louisiana to join a consortium of States to develop assessments aligned with the Common Core standards known as the Partnership for Assessment of Readiness for College and Careers (PARCC).

With great fanfare, and a stated commitment to adopt Common Core standards and implement assessments, Governor Jindal signed Louisiana's applications for substantial federal grant money available under the Race to the Top (RTT) Program.[5] As a result of these efforts, in 2011, Louisiana was awarded $17.4 million in RTT grants.[6] According to the Governor, "to date, Louisiana has drawn down $12,678,383 of the [grant] amount."[7] In other words, the State has spent almost $13 million of the $17.4 million RTT grant it received in 2011.

The State, under Governor Jindal's administration, also applied for and received

---

[5] A voluntary competition among States that elected to make comprehensive education reforms as authorized by the American Recovery Reinvestment Act of 2009 (ARRA).

[6] Rec. Doc.No. 29, p. 3.

[7] *Id.*

Doc 25395                                                     2

waivers of many substantial, and some would even argue burdensome, conditions of the Elementary and Secondary Education Act (ESEA).[8] In essence, by obtaining ESEA waivers, the State was able to maintain ESEA funding with significantly less "red tape." Louisiana applied for and began receiving ESEA waivers in 2012.[9] Louisiana continues to enjoy the benefits of ESEA waivers for which it applied and was granted.[10]

Following a groundswell of public opinion indicating disapproval with the Common Core Standards and the PARCC assessments, Governor Jindal moves this Court to enjoin the DOE from enforcing what the Governor calls unlawful and coercive conditions which he contends are the *quid pro quo* for the State to receive RTT funds and ESEA waivers. Governor Jindal argues that the DOE coerced the State into adopting a common set of K-12 standards defined as "a set of content standards that define what students must know and be able to do and that are substantially identical across all States in a consortium," and to join a consortia of States to develop assessments aligned with those standards.[11] The Governor argues that the State had no meaningful choice in the standards it adopted

---

[8] The Elementary and Secondary Education Act (ESEA) is a federal grant-in-aid program enacted in 1965 with the goal of improving educational opportunities available to disadvantaged children. The ESEA was augmented and re-authorized by the No Child Left Behind Act (NCLB) in 2002. As is often the case with federal grant programs, more and more federal dollars became available to the States, and as funding increased, so did the granting conditions and requirements placed on the States. In 2011, the DOE implemented a program to provide the States with opportunities to obtain relief (waivers) from some of the ESEA/NCLB granting conditions if the State adopted college and career-ready content standards and administered annual assessments aligned with those standards. Rec. Doc. No. 19-1, p. 10. Louisiana applied for and received waiver of ESEA conditions "based in part on its assurances that it had adopted Common Core standards and would administer PARCC assessments." Rec. Doc. No. 29, p. 4.

[9] *Amended Complaint*, Rec. 27, ¶ 46(A).

[10] According to Governor Jindal's *Amended Complaint*, the "waivers will expire at the end of the 2014-2015 school year. *Id.*

[11] Rec. Doc. No. 29, p. 2, citing 74 Fed. Reg. 59838 (Nov. 18, 2009); 74 Fed. Reg. 18171 (April 9, 2010;); 76 Fed. Reg. 56183 (Sept. 12, 2011).

because the Common Core Standards were the only readily available standards that met DOE's regulatory requirements.[12]  Seeking succor in the shelter of the Tenth Amendment, Governor Jindal argues that the DOE leaves no room for the States to exercise their sovereign authority over education. The Governor maintains that the combination of common standards and assessments aligned to measure the achievement of those standards has the practical effect of prescribing educational curriculum which is squarely and exclusively within the sovereign province of the State.[13]

## II.   LAW & ANALYSIS

### A.   The Tenth Amendment

Under the Tenth Amendment, "the Federal Government may not compel States to implement, by legislation or executive action, federal regulatory programs."[14]  However, while the federal government may not compel them to do so, it may encourage States and municipalities to implement federal regulatory programs.[15]  For example, the federal government may make certain federal funds available only to those States or municipalities that enact a given regulatory regime.[16]  The crucial proscribed element is coercion; the

---

[12] *Id.*

[13] According to Governor Jindal, "While it may be true that requiring common standards alone does not prescribe or direct a specific curriculum, the cumulative effect of requiring common standards and aligned assessments clearly does." Rec. Doc. No. 29, p. 3.

[14] *Printz v. United States*, 521 U.S. 898, 925, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); *see also New York*, 505 U.S. at 188, 112 S.Ct. 2408.

[15] *See New York*, 505 U.S. at 166–68, 112 S.Ct. 2408.

[16] *See, e.g., South Dakota v. Dole*, 483 U.S. 203, 205–08, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (upholding federal statute conditioning state receipt of federal highway funds on state adoption of minimum drinking age of twenty-one).

residents of the State or municipality must retain "the ultimate decision" as to whether or not the State or municipality will comply with the federal regulatory program.[17] However, as long as "the alternative to implementing a federal regulatory program does not offend the Constitution's guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappealing is insufficient to establish a Tenth Amendment violation."[18]

Governor Jindal has emphasized that his challenge is not to the legislation enacted by Congress but rather to the DOE's actions that are expressly prohibited by several Education Acts.[19] Hence, it is not Congress that is alleged to have enacted legislation which violates the Spending Clause, but the DOE as an executive agency that has allegedly imposed grant programs and conditions pursuant to this legislation that are impermissibly coercive and beyond federal Spending Clause authority. In fact, Governor Jindal contends the Education Acts enacted by Congress expressly preserve the State sovereignty over aspects of education policy that the DOE has invaded.

### B. Rule 12(b)(1) Motion to Dismiss

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. The DOE moves to dismiss for lack

---

[17] *New York*, 505 U.S. at 168, 112 S.Ct. 2408.

[18] *City of Abilene v. EPA,* 325 F.3d 657, 662 (5th Cir. 2003).

[19] General Education Provisions Act of 1965, 20 U.S.C. § 1221, *et. seq.*; the Department of Education Organization Act of 1979, 20 U.S.C. § 3401, *et. seq.*; the ESEA as amended by the No Child Left Behind Act of 2001, 20 U.S.C. § 3401, *et. seq.*

of subject matter jurisdiction. Article III, § 2 of the Constitution limits federal courts' jurisdiction to certain "Cases" or "Controversies."[20] "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[21] One element of the case-or-controversy requirement is that plaintiffs must establish standing to sue.[22] Even claims of Constitutional magnitude, such as this one, require that the party bringing the suit demonstrate standing. In order to have standing to bring this suit, the Governor, like any other litigant bringing any other claim, must demonstrate: (1) an actual or imminent injury which is concrete and particularized; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the alleged injury. It is not enough to "to complain simply that the Government is violating the law."[23]

Owing to its limited jurisdiction, the Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."[24] Absent standing, there is no "Case" or "Controversy," and this Court would lack subject matter jurisdiction.

---

[20] *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849 (1997); *Clapper v Amnesty Intl. USA*, — U.S. —, 133 S.Ct. 1138, 1152 (2013).

[21] *Id.*, quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)(internal quotation marks omitted).

[22] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992); *Raines v. Byrd*, 521 U.S. at 818.

[23] *Bond v United States,* — U.S. —, 131 S. Ct. 2355, 2366, 180 L.Ed.2d 269 (2011)(quoting *Allen v Wright,* 468 U.S. 737, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)(internal quotation marks omitted).

[24] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

The district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[25] A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction.[26] "If sufficient, those allegations alone provide jurisdiction."[27] Facial attacks are usually made early in the proceedings.[28] Where the defendant supports the motion with evidence, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[29] A factual attack may occur at any stage of the proceedings.[30] Regardless of the nature of the attack, the party asserting jurisdiction constantly carries the burden of proof to establish that jurisdiction does exist.[31]

"In the special case where the challenged basis of jurisdiction is also an element of

---

[25] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).

[26] *See Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1998); *see also Rodriguez v. Tex. Comm'n on the Arts*, 992 F.Supp. 876, 878 (N.D.Tex.1998) (citation omitted).

[27] *Lockridge v. Dallas County Schools*, No. 10-CV-1175-O, 2010 WL 5538436, at *2 (N.D. Tex. Dec. 8, 2010)(citations omitted).

[28] *Id.*

[29] *Williamson*, 645 F.2d at 413.

[30] *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).

[31] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam); *Rodriguez*, 992 F.Supp. at 879.

plaintiff's federal cause of action, the proper course of action is to limit the jurisdictional inquiry to facial scrutiny, and reserve the factual scrutiny for the merits of the cause of action."[32] In such circumstances, the court should dismiss the case under Rule 12(b)(1) only if the facial attack succeeds.[33] Of course, "if the jurisdictional challenge does not implicate the merits of the cause of action, the jurisdictional basis must survive both facial and factual attacks before the district court can address the merits of the claim."[34] Both parties in this case agree that the instant challenge to the Court's subject matter jurisdiction is facial.[35] The DOE offers no evidence in support of its factual assertions;[36] hence, the

---

[32] *Lewis v. Knutson*, 699 F.2d 230, 237 (5th Cir.1983); *see also Montez v. Department of Navy,* 392 F.3d 147, 150 (5th Cir. 2004) (quoting *Williamson*, 645 F.2d at 415).

[33] *Id.*

[34] *Id.*

[35] *See* Rec. Doc. No. 29, p. 7 & Rec. Doc. No. 30, p. 11. To the extent that the DOE's motion constitutes a factual attack, the Court would reach the same decision. The DOE contends that the Fifth Circuit's holding in *Montez v. Department of Navy*, 392 F.3d 147 (5th Cir. 2004)( where there is an intertwined attack on jurisdiction and merits, "resolution of the jurisdictional issue on a 12(b)(1) motion is improper") was called into doubt by *Houston Refining v. United Steel*, 765 F.3d 396 (5th Cir. 2014), which discouraged a court's "assumption" of jurisdiction. The Court has examined the wealth of Fifth Circuit jurisprudence on this issue and would deny the *Motion to Dismiss* on a factual attack of Plaintiff's *Complaint* because, "[to the extent that the jurisdictional question and the merits are intertwined, a plaintiff who has yet to undertake discovery almost certainly has not had the chance to fully ascertain the jurisdictional facts." *Wiltz v. American Security Insurance Company*, No. 10-635, 2010 WL 4668355, at *6 (E.D. La., Nov. 9, 2010). Thus, while a district court may choose to address a jurisdictional question at a pretrial evidentiary hearing, *e.g., Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008), it may be more appropriate to address the jurisdictional question on a motion for summary judgment or at trial, *see, e.g., Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989). In particular, it is often preferable that [the jurisdictional] determination be made at trial because this ensures not only that a plaintiff may present his case in a coherent, orderly fashion, *Walk Haydel*, 517 F.3d at 241 (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n. 2 (9th Cir.1977)), but also that adequate time is given to complete discovery and all the jurisdictional facts are fully developed, *Chatham Condominium Ass'ns*, 597 F.2d at 1012. (Internal quotation marks omitted). Moreover, regardless of whether the jurisdictional question and the merits of the claim are intertwined in this matter, it should be clear that the determination of whether this Court has subject-matter jurisdiction over the instant case is not a one-time event. The Federal Rules of Civil Procedure do not contemplate a limit as to when a court can entertain a challenge to its subject-matter jurisdiction. *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.") Likewise, the Supreme Court has long held that an objection to a court's subject-matter jurisdiction can be made "at any stage in the litigation, even after trial and the entry of

Court will look solely to the presumptively true allegations on the face of the Plaintiff's *Complaint*, as amended.

### C. Standing

The United States Supreme Court instructs that, "the irreducible constitutional minimum of standing contains three elements."[37] These elements are: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury."[38] "The party invoking federal jurisdiction bears the burden of establishing these elements."[39] At the pleading stage, allegations of injury are liberally construed.[40] In this case, the DOE contends that Governor Jindal fails to satisfy any of these three requirements to establish standing.

#### 1. Injury

The parties agree that with respect to the manner and means of educating its

---

judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). In other words, "even if the defense [of the lack of subject-matter jurisdiction] is overruled, stricken, or excluded by the district court, it may be reasserted at any time in the action." *Wright & Miller, supra*, § 1350; *accord Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). In this case, if discovery subsequently reveals that Plaintiff cannot meet the standing requirement, the question of subject-matter jurisdiction can and should certainly be revisited.

[36] The only evidence beyond the face of the pleadings offered by movant are certain State Court Pleadings. Rec. Doc. Nos. 19-2 & 19-3.

[37] *Lujan v. Defenders of Wildlife*, 504 U.S. at 560.

[38] *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130).

[39] *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

[40] *Little v. KPMG,LLP*, 575 F.3d 533, 540 (5th Cir. 2009)("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim' [of standing]." (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990))).

citizenry, States are sovereign. In fact, the ESEA expressely prohibits the DOE from endorsing, approving or sanctioning any curriculum.[41] Governor Jindal contends that the common standards (in this case, the Common Core Standards), together with aligned assessments (in this case, the PARCC assessments), are collectively tantamount to curriculum. Governor Jindal also contends that RTT grants and ESEA waivers are conditioned on the State's commitment to adopting common standards and aligned assessments; thus, there is injury because Louisiana's sovereignty in its right to choose curriculum has been infringed. Governor Jindal argues that the DOE has disregarded federal education law[42] and the United States Constitution by overreaching and regulating in a field strictly within the State's province: the control of curriculum, content standards, and programs of instruction. Essentially, Governor Jindal claims that the enticement of substantial RTT grant money and the lure of ESEA waivers operated to coerce the State into adopting the Common Core Standards and PARCC assessments, which he contends are curriculum.

The DOE denies that the RTT grant conditions or the ESEA waiver program operated to coerce the State into adopting Common Core and aligned assessments. Rather, DOE contends that Governor Jindal fails to demonstrate injury to Louisiana's sovereignty over public education because Louisiana, under Governor Jindal's

---

[41] 20 U.S.C. § 7907(b).

[42] Governor Jindal also argues that the DOE's executive action establishing conditions for the ESEA waivers is ultra vires, or beyond the scope of the DOE's regulatory authority as endowed by Congress. The Governor alleges that "[n]o authority exists in the ESEA permitting the Secretary to grant waivers in exchange for such conditions," referring to the condition that the State adopt common standards and assessments. The DOE counters that under ESEA the Secretary is authorized to waive any statutory requirement of the ESEA. Rec. Doc. No. 27, p. 19, ¶ 43.

Administration, voluntarily adopted the standards and implemented the associated assessments.[43] In response, Governor Jindal relies on the Supreme Court's decision in *New York v. United States* that "State officials thus cannot consent to the enlargement of the powers of Congress beyond those enumerated in the Constitution."[44] In that case, the Supreme Court held that, "[w]here Congress exceeds its authority relative to the States ... the departure from the constitutional plan cannot be ratified by the 'consent' of state officials."[45]

Allegations of injury that are merely conjectural or hypothetical do not suffice to confer standing.[46] Governor Jindal maintains that the alleged injury to Louisiana's sovereignty is both actual, because the allegedly unlawful conditions bind the State's current participation in the programs, and imminent, because the allegedly unlawful conditions threaten the State's future eligibility for both the RTT and ESEA programs. Governor Jindal argues that the State is in imminent risk of losing RTT grant money if Louisiana discontinues Common Core and the PARCC, and that this risk of loss is actual

---

[43] In support of the argument that Louisiana willingly and voluntarily adopted common standards and aligned assessments, the DOE argues that, with Governor Jindal's support, Louisiana voluntarily adopted a common set of K-12 standards and aligned assessments. The Louisiana Board of Elementary and Secondary Education ("BESE") elected to adopt the Common Core State Standards, which the Governor publicly lauded. The Louisiana Legislature enacted concomitant legislation which the Governor signed into law. And finally, the DOE argues that Governor Jindal, The Superintendent of Education, and the BESE President, all signed on to join PARCC and agreed to adopt the assessments it developed. Thus, the DOE contends that it matters not whether these action enabled Louisiana to successfully apply for an RTT grant and ESEA flexibility because there was no coercion. Rec. Doc. No. 19-1.

[44] 505 U.S. 144, 182, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

[45] *Id.* at 147.

[46] *Little*, 575 F.3d at 540, citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344–46, 350, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006).

and particularized injury in support of standing. The DOE counters that a State's commitment to adopting common standards and progress in adopting same are just two of the factors on which a State's RTT application is evaluated and count for a mere 40 points out of a possible 500 points. Thus, if Louisiana were to discontinue use of the Common Core State Standards and withdraw from PARCC, this would not result in an automatic cancellation of the State's RTT grant but would instead require the DOE to evaluate the amended application to determine whether the State still demonstrates a commitment to comprehensive education reform. This is a factual issue which cannot be resolved in the context of the instant 12(b)(1) motion.

Additionally, the DOE contends that no existing federal funding was conditioned on applying for or obtaining an RTT grant. The DOE argues that giving States an opportunity, but not an obligation, to obtain additional discretionary funding, with no corresponding decrease in existing funding if the opportunity is not taken, cannot constitute an injury-in-fact under established Supreme Court jurisprudence.[47] Through RTT, the DOE contends it encouraged, but did not require, that States adopt common standards and high quality assessments. The DOE claims it has never endorsed and did not create the Common Core State Standards or any other set of standards. These standards were developed by members of the Consortium of States.[48]

As to the ESEA flexibility, the DOE contends that a State can amend a flexibility request and that adopting common standards and membership in a State assessment

---

[47] Rec. Doc. No. 19-1, pp. 26-28, relying on *Lujan* and *Clapper.*

[48] *See* 74 Fed. Reg. At 59733 & CRS Report at 22.

consortium are not the sole means of qualifying for ESEA flexibility. The DOE maintains that, just like RTT, the ESEA waiver program was a new, voluntary opportunity for the States to obtain a waiver of certain ESEA requirements in exchange for the described education reforms. If a State did not desire an ESEA waiver, then the status quo simply continued for that State. The DOE contends that, for a number of States that declined to request ESEA flexibility, the DOE did not alter their ESEA funding as a consequence. For those who desired an ESEA waiver, the DOE claims that adopting the Common Core State Standards was just one available option for qualifying, not the only required option. Indeed, the DOE notes that some States, such as Virginia, received waivers under ESEA flexibility without adopting the Common Core Standards. The Court declines to make factual findings on the record before it at this stage in the proceedings.

Whether Louisiana had a meaningful choice as to whether or not to adopt a set of common standards and aligned assessments, and whether the Secretary of DOE had the authority to grant ESEA waivers in exchange for conditions, is only part of the injury inquiry. Even if the common standards and aligned assessments were thrust upon Louisiana, without any meaningful way to resist, and even if the Secretary was without the authority to grant conditional ESEA waivers, Louisiana's sovereign right to control education is injured only if the Common Core Standards and PARCC assessments jointly operate in a way that mandates educational curriculum, content or programs of instruction. This is the injury which Governor Jindal alleges, and the Court is obliged at this stage of the proceedings to presume the allegations, as pled, true. Hence, as pled, the *Complaint*, sets forth injury sufficient to satisfy the constitutional standing inquiry.

## 2. Causation

The DOE contends Governor Jindal cannot show a causal connection between the alleged impairment of state sovereignty and the DOE's education programs because Louisiana state officials, including the Governor, chose to adopt the Common Core Standards and PARCC assessments. As such, the DOE contends Governor Jindal cannot show that the purported encroachment on State sovereignty is "fairly traceable" to the DOE. Citing *Clapper v Amnesty Intl.*, the DOE maintains that Governor Jindal's "self-inflicted injuries are not fairly traceable to the Government's purported activities."[49]

Finally, the DOE argues that any potential losses in funding that Louisiana may sustain by discontinuing Common Core standards and withdrawal from PARCC would be attributable to the State's own actions. In this instance, it is the State that would be choosing to breach its own voluntary written commitments and its assurances to the DOE, as well as ignoring or refusing alternative means of maintaining Louisiana's eligibility.

The Court is not persuaded by DOE's arguments that there is a lack of causation. As many courts have held: "[T]he requirement that plaintiff's injuries be 'fairly traceable' to the defendant's conduct does not mean that plaintiffs must show to a scientific certainty that defendant's [conduct] caused the precise harm suffered by the plaintiffs."[50] Indeed, at this early stage of the litigation, "the [standing-causation] standard is not equivalent to a requirement of tort causation"; to the contrary, "the plaintiffs' 'burden ... of alleging that their

---

[49] — U.S. —, 133 S.Ct. at 1152 (2013)

[50] *Connecticut v. Am. Elec. Power Co., Inc.,* 582 F.3d 309, 346 (2d Cir. 2009), *rev'd on other grounds,* —– U.S. ——, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011).

injury is "fairly traceable" to' the challenged act 'is relatively modest.'"[51]  As previously stated, for the purposes of the motion before the Court, the allegations of the Plaintiff's *Complaint* are presumed true. On the face of the *Complaint*, as amended, Governor Jindal alleges that the DOE programs, as implemented, coerced State cooperation which had the effect of diminishing or impairing the State's sovereign right to control education of its citizenry. The presumed true allegations of the Complaint allege a causal connection between the DOE programs and an alleged encroachment on State sovereignty sufficient to satisfy jurisdictional standing.

### 3. Redressability

Governor Jindal must also plead facts sufficient to demonstrate a likelihood that a favorable decision will redress the alleged injury. The alleged injury is infringement on Louisiana's state sovereignty.  As stated above, there is only infringement to the State's sovereignty over the field of education if the standards and assessments are *de facto* curriculum.  It seems plain that the redress for injury to the State's sovereignty over education would be to restore the State's sovereignty over matters of educational curriculum.

The DOE posits that such redress is beyond reach in this litigation because, even if Governor Jindal prevails, it would not result in Louisiana's withdrawal from the Common Core State Standards or PARCC.  The DOE argues that under controlling state law, Governor Jindal alone cannot withdraw the State's adoption of the Common Core

---

[51] *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir . 2013) (quoting *Bennett v. Spear*, 520 U.S. 154, 171, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)) (other quotations and citations omitted).

Standards and PARCC assessments.[52] According to the DOE, in order for Louisiana to withdraw from PARCC, the same officials who entered the Memorandum of Understanding, namely, the Governor, Louisiana's Superintendent of Education and the BESE President, must sign the notice of withdrawal from PARCC. The DOE argues that pending state court litigation related to this matter[53] shows that BESE and the State Superintendent of Education intend to continue application of the Common Core Standards and participation in PARCC, and that, because Governor Jindal cannot show that BESE is likely to drop the Common Core Standards it elected to adopt and apparently continues to support, Governor Jindal fails to establish the redressability requirement. Relying on *Clapper,* the DOE urges that speculation about the future actions of third parties cannot be relied upon to establish standing. The Supreme Court has declined to "abandon our usual reluctance to endorse standing theories that rest of the speculation about the decisions of independent actors."[54] While the Court is cognizant of the ongoing legal battles in Louisiana State courts over the implementation of Common Core, the relief sought in this Court is the removal of the

---

[52] Louisiana Revised Statute § 36:645 (A)(5) specifically states that the State Superintendent of Education is vested with the power to:
> act as the sole agent of the state or, in necessary cases, designate one of the offices within the department or its deputy superintendent, to cooperate with the federal government and with other state and local agencies in matters of mutual concern and in the administration of federal funds granted to the state or directly to the department or an office thereof to aid in the furtherance of any function of the department and its offices. For this purpose he may take such actions, in accordance with applicable state law, necessary to meet such federal standards as are established for the administration and use of such federal funds, except as otherwise specifically provided in this Title or by the constitution and laws of this state.

[53] *Navis Hill, et al v. Bobby Jindal, et al*, Number 632, 170, Section 27, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana; *James Armes, et al v. State of Louisiana, et al*, Suit No. 632150, Division F, Section XXII, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

[54] *Clapper*, 133 S.Ct. at 1150.

alleged barrier to Louisiana's Sovereign ability to make education decisions.

The question of redressability is: Will the relief sought cure the injury alleged? According to the DOE, if the injury is that Common Core, in conjunction with the PARCC assessments, constitute curriculum, and therefore an unconstitutional infringement on State sovereignty, then the relief would be to withdraw from Common Core and PARCC. That is not the relief which the Governor seeks. At oral argument, the Governor's counsel made it clear that the Governor is not asking that the Court order that Louisiana be relieved of the Common Core Standards or the PARCC assessments. Rather, the Governor makes it clear that "[t]he relief sought from this Court is a declaration that the challenged conditions - *not* the programs or other conditions thereof - are unlawful and an order enjoining DOE from enforcing only those unlawful conditions, prospectively."[55]

It is true that an Order of this Court declaring that the DOE cannot lawfully condition RTT grants or ESEA waivers on the adoption of common standards and aligned assessments, and a prohibition from enforcing those conditions in the future, will not necessarily eliminate Common Core and/or the PARCC Assessments. Governor Jindal contends the DOE is incorrect in arguing that the State's injury cannot be redressed simply because the State may elect to continue to use Common Core. Rather, Governor Jindal's argument is that elimination of the RTT grant conditions and the ESEA waiver program conditions will restore the State's right to choose its curriculum. Governor Jindal concedes that "Louisiana's future with or without Common Core is a political question for the officials

---

[55] Rec. Doc. No. 17, p. 4 and Rec. Doc. No. 1, p. 28.

and voters of Louisiana."[56] However, he contends that, as long as Common Core and aligned assessments are conditions for RTT grants and ESEA waivers, Louisiana has no meaningful choice, thus, it's sovereignty has been eviscerated.

Governor Jindal argues that whether the State voluntarily chooses to continue to use Common Core has no bearing on redressability in this case because Governor Jindal is seeking removal of the alleged barrier to Louisiana's ability to make that choice or not. Regardless of whether the State will eliminate or continue Common Core in the future, Governor Jindal claims this action is about allowing the State of Louisiana the freedom to make that decision without the threat of losing its remaining RTT grant funds or eligibility for the ESEA waiver program.

Governor Jindal relies on *Bond v. United States*[57] in support of this assertion. In *Bond*, the Supreme Court held that, in certain circumstances, an individual has standing to challenge a federal statute on the grounds that it interferes with powers reserved to the States under the Tenth Amendment. Notably, the Court found: "Just as it is appropriate for an individual, in a proper case, to invoke separation-of-powers or checks-and-balances constraints, so too may a litigant, in a proper case, challenge a law as enacted in contravention of constitutional principles of federalism."[58]

For the same reasons that the Court concludes that the *Complaint* sufficiently pleads facts which, when assumed true, satisfy the injury and causation requirements for standing;

---

[56] Rec. Doc. No. 17, p. 10.

[57] 131 S.Ct. 2355 (2011).

[58] *Id.* at 2365.

so too the *Complaint* pleads sufficient facts regarding the redressability requirement.

In summary, the Supreme Court has observed that States may constitute a special class of plaintiffs for federal jurisdiction purposes.[59] The DOE challenges the veracity of Governor Jindal's claims, but the Court would have to look outside of the pleadings at extrinsic evidence to resolve these factual disputes. Although it has the authority under Rule 12(b)(1) to find facts based on record evidence, there is insufficient record evidence to enable the Court to resolve the myriad of complex factual issues presented. For the Court to simply accept the DOE's arguments as factually accurate over Governor Jindal's allegations would be erroneous. The DOE's arguments go to the merits of Governor Jindal's claims rather than standing.

To be clear, the Court finds only that Governor Jindal has sufficiently alleged facts which support the finding that the Court has subject matter jurisdiction. The burden remains on Governor Jindal to prove these allegations on the merits. Furthermore, the Court is not called upon to enter the political arena to judge the merits of Common Core, and it will not do so. This Court is only tasked with determining whether the Tenth Amendment is violated by the program conditions imposed by the DOE.

---

[59] In *Massachusetts v. E.P.A.* 549 U.S. 497, 518, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007), the Supreme Court stated that "[i]t is of considerable relevance that the party seeking review here is a sovereign State and not, as it was in *Lujan*, a private individual."

## III. CONCLUSION

For the reasons set forth above, the *Motions to Dismiss* [60] are DENIED without prejudice to the Defendants' right to re-urge the motion if warranted. The parties are referred to the Magistrate Judge for discovery deadlines. The Plaintiff's *Motion for Preliminary Injunction*[61] is set for evidentiary hearing on Thursday, May 28, 2015, at 9:30 a.m.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on February 26, 2015.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[60] Rec. Doc. Nos. 19 & 28.

[61] Rec. Doc. No. 2.